Bakelite Corporation et al. *v.* United States (No. 3056)[1]

United States Court of Customs Appeals, November 30, 1928

*Barnes, McKenna & Halstead* (*Samuel M. Richardson* of counsel) for appellants
*Charles D. Lawrence*, Assistant Attorney General (*Ralph Folks*, special attorney, of counsel), for the United States.
*James F. Curtis*, amicus curiæ.

---

[1] T. D. 43117.

[Oral argument October 10, 1928, by Mr. Barnes, Mr. Lawrence, and Mr. Curtis]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The Bakelite Corporation and Wm. G. Foster & Co. imported at New York 13 shipments of merchandise entered as "coal-tar distillate" and "crude cresylic acid." It appears that the material involved is the same material involved in *United States* v. *General Bakelite Corporation*, 13 Ct. Cust. Appls. 607, T. D. 41458, and that it consists of a mixture of coal-tar pitch and cresylic acid; that the cresylic acid content of this mixture, when subjected to distillation below 190° centigrade, distills less than 5 per centum of tar acids, and when subjected to distillation below 215° centigrade, distills more than 75 per centum of tar acids.

The collector classified the merchandise under paragraph 27 of the tariff act of 1922, as a mixture of coal-tar products provided for in the paragraph. The importers protested, claiming free entry under paragraph 1549 of said act. The Customs Court overruled the protest, and the importers have appealed. This appeal is, practically, a retrial of the issues presented to us in *United States* v. *General Bakelite Corporation*, *supra*, with the addition of some supplemental testimony which will hereinafter be further referred to. The record in the former case was offered and is incorporated in the present record.

We said, in *United States* v. *General Bakelite Corporation*, *supra*:

We held in the case of *Lehn & Fink* v. *United States*, 12 Ct. Cust. Appls. 359, T. D. 40519 that, in order to determine the intention of Congress as expressed therein and to give effect to the provisions thereof, paragraphs 27 and 1549, *supra*, should be construed together. When this is done it plainly appears that the distillates provided for in paragraph 27 were intended to be excluded from paragraph 1549, *supra*, and that the distillates provided for in the latter paragraph were not included within the provisions of the former. Accordingly, if a distillate answers to either of the tests provided for in paragraph 27, *supra*, it is excluded from paragraph 1549, *supra*. If this were not true it would be impossible to reconcile the provisions of the two paragraphs. But we are not required to resort to rules of construction in order to ascertain the legislative purpose. The Congress has plainly indicated by the "not specially provided for" clauses contained in the paragraphs in question that their respective provisions should be considered together. Moreover, the Congress has plainly said that the distillates provided for in paragraph 1549, *supra*, were not included in paragraph 27, *supra*. The language in paragraph 27, *supra*, is "all distillates" of the coal tars mentioned therein; while the language of paragraph 1549, *supra*, is "all *other* distillates" of the coal tars mentioned in the paragraph. (Italics ours.) Obviously, the provision for "all *other* distillates" in the latter paragraph was intended to embrace all distillates which responded to the test provided therein, other than those provided for in paragraphs 27 and 28 of the act. (Italics ours.)

It is stipulated that the mixture or solution in question is composed of a coal-tar pitch, which is specially provided for in paragraph 1549, *supra*, and a coal-tar distillate, cresylic acid, which distillate, when subjected to distillation, responds to the second test provided by paragraph 27, *supra*. The distillate

constituent of the mixture or solution is, therefore, specially provided for in paragraph 27, *supra*, and, being specially provided for therein, is not included in the provision for "all other distillates" contained in paragraph 1549, *supra*. *Lehn & Fink* v. *United States, supra.*

The provision for "all mixtures" contained in paragraph 1549, *supra*, being expressly limited to such as are composed of the pitches and distillates provided for therein, does not, therefore, include the merchandise in question.

This would seem to be decisive as to the matters involved here. However, the appellants introduced as supplementary evidence in the case at bar the testimony of two chemical expert witnesses, Conrad F. Schrimpe and Lawrence V. Redman. The former testified that he did not consider the imported material a coal-tar product, but rather a mixture of such products; that such mixtures, from a chemical standpoint, are not coal-tar products; that when coal-tar pitch is mixed with a coal-tar distillate, part of the pitch goes into solution with the distillate, and the free carbon is left dispersed in the solution; that under paragraph 27, the word "products" refers to the compounds specially named in the paragraph, and does not include distillates or mixtures of such distillates and coal-tar pitches. The testimony of Redman is, substantially, to the same effect, namely, that a coal-tar product, as named in said paragraph 27, included only the chemical individuals or compounds therein specifically named. Based upon this testimony, it is contended that the judgment of this court in *United States* v. *General Bakelite Corporation, supra*, was in error, and that the language, "all mixtures, including solutions, consisting in whole or in part of any of the foregoing products provided for in this paragraph," should be held to include only mixtures of the specific chemical individuals or compounds enumerated in the first portion of said paragraph 27. For convenience, the material portions of said paragraphs 27 and 1549 are here inserted, the former divided into numbered clauses:

PAR. 27. Coal-tar products: (1) Acetanilide not suitable for medicinal use, alpha-naphthol, aminobenzoic acid, * * * all the foregoing products in this paragraph whether obtained, derived, or manufactured from coal tar or other source; (2) all distillates of coal tar, blast-furnace tar, oil-gas tar, and water-gas tar, which on being subjected to distillation yield in the portion distilling below one hundred and ninety degrees centigrade a quantity of tar acids equal to or more than 5 per centum of the original distillate or which on being subjected to distillation yield in the portion distilling below two hundred and fifteen degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate; (3) all similar products by whatever name known, which are obtained, derived, or manufactured in whole or in part from any of the products provided for in this paragraph, or from any of the products provided for in paragraph 1549; (4) all mixtures, including solutions, consisting in whole or in part of any of the foregoing products provided for in this paragraph, except sheep dip and medicinal soaps; (5) all the foregoing products provided for in this paragraph, not colors, dyes, or stains, * * *; (6) for the purposes of this paragraph any coal-tar product provided for in this act shall be considered similar to or competitive with any imported coal-tar product which

accomplishes results substantially equal to those accomplished by the domestic product when used in substantially the same manner: * * *.

PAR. 1549. Coal-tar products: Acenaphthene, * * * all other distillates of any of these tars which on being subjected to distillation yield in the portion distilling below one hundred and ninety degrees centigrade a quantity of tar acids less than 5 per centum of the original distillate, all mixtures of any of these distillates and any of the foregoing pitches, and all other materials or products that are found naturally in coal tar, whether produced or obtained from coal tar or other source, and not specially provided for in paragraph 27 or 28 of Title I of this act.

We are unable to perceive how any such claim may be maintained. The word "product" is thus defined:

Product: 1. Anything produced, as by generation, growth, labor, or thought, or by the operation of involuntary causes; as, the products of the season, or of the farm; the products of manufactures; the products of the brain. (Webster's New International Dictionary, 1925.)

The word, as used in the statute, must be given its ordinary meaning, no commercial designation being attempted to be shown. If the testimony of the witnesses for the importers may be construed as simply expressing their interpretation of the statute, then such testimony is immaterial; if their statements may be taken as an attempted statement of the scientific meaning of the word "products," it is sufficient to note that tariff acts are drafted, "not in the terms of science, but in the language of commerce, which is presumptively that in common use." *Meyer & Lange* v. *United States*, 6 Ct. Cust. Appls. 181, T. D. 35436.

It follows, therefore, that the words "coal-tar products," which introduce the language of said paragraph 27, refer to materials or things produced from coal tar, such as are enumerated thereinafter. And this, we believe, is the meaning to be attached to it, wherever found in the paragraph. It is not reasonable to assume that the Congress had in mind any fine technical distinctions, such as men of science might draw, between chemical individuals and compounds and products. If the appellants are right in their contentions, then the word "product" as used in our subdivision (6) of said paragraph 27 refers only to the specific chemical individuals and compounds named in the paragraph. Thus, all distillates and mixtures thereof mentioned in the paragraph would be deprived of the protection which the paragraph evidently sought to provide for all domestic coal-tar materials and derivatives.

We are quite certain that in our subdivision (4) of said paragraph 27 the Congress intended, by the language, "the foregoing products provided for in this paragraph," to include all materials theretofore enumerated in the paragraph, including the distillates therein named. To hold otherwise would be to give to the word, "products," as used in said paragraph, one meaning in certain portions of the paragraph

and another meaning in other portions. There is nothing before us to indicate that any such anomalous result was intended.

The judgment of the Customs Court is, therefore, *affirmed.*