HUMMEL CHEMICAL CO. *v.* UNITED STATES (No. 4356)[1]

United States Court of Customs and Patent Appeals,
December 29, 1941

*Lamb & Lerch* (*John G. Lerch* and *Thomas J. McKenna*, of counsel) for appellant.
*Paul P. Rao*, Assistant Attorney General (*Charles D. Lawrence*, special assistant to the Attorney General, and *Richard F. Weeks* and *Joseph F. Donohue*, special attorneys, of counsel), for the United States.

[Oral argument December 3, 1941, by Mr. Lerch and Mr. Donohue]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court (First Division) overruling a protest by appellant against the

---

[1] C. A. D. 189.

assessment by the Collector of Customs at the port of New York, under the provisions of section 701 of the Revenue Act of 1936, of a tax of 3 cents per pound upon certain "wool grease" imported from Japan.

The merchandise was classified by the collector under paragraph 52 of the Tariff Act of 1930 as "wool grease containing more than 2 per centum of free fatty acids," and regular tariff duty was imposed thereon at the rate of 1 cent per pound.

Appellant's protest made no reference to the classification of the merchandise under paragraph 52, but claimed that the merchandise was not subject to the tax of 3 cents per pound upon the ground that it consisted of animal wax rather than animal fat.

Upon the trial before the Customs Court it was conceded that the merchandise is dutiable under paragraph 52, and the only controverted question is whether the merchandise is subject to said tax of 3 cents per pound.

Paragraph 52 of the Tariff Act of 1930 reads as follows:

PAR. 52. Oils, animal and fish: Sod, herring, and menhaden, 5 cents per gallon; whale and seal, 6 cents per gallon; sperm, crude, 10 cents per gallon; sperm, refined or otherwise processed, 14 cents per gallon; spermaceti wax, 6 cents per pound; *wool grease containing more than 2 per centum of free fatty acids, 1 cent per pound;* containing 2 per centum or less of free fatty acids and not suitable for medicinal use, 2 cents per pound; suitable for medicinal use, including adeps lanae, hydrous or anhydrous, 3 cents per pound; all other animal and fish oils, fats, and greases, not specially provided for, 20 per centum ad valorem. [Italics ours.]

Section 701 of the Revenue Act of 1936, insofar as it is here pertinent, reads as follows:

SEC. 701. TAX ON CERTAIN OILS.

The first sentence of section 601 (c) (8) of the Revenue Act of 1932, as amended, is amended to read as follows:

(8) Whale oil (except sperm oil), fish oil (except cod oil, cod-liver oil, and halibut-liver oil), marine-animal oil, tallow, *inedible animal oils, inedible animal fats, inedible animal greases,* fatty acids derived from any of the foregoing, * * * all the foregoing, whether or not refined, sulphonated, sulphated, hydrogenated, or otherwise processed, 3 cents per pound; * * *. [Italics ours.]

The question presented for determination is whether the involved wool grease is an inedible grease subject to the aforesaid tax of 3 cents per pound.

As hereinbefore noted, appellant conceded on the trial that the involved merchandise is provided for under paragraph 52 of the Tariff Act of 1930 as wool grease, but contends that it is not an inedible oil, fat, or grease provided for in section 701 of the Revenue Act of 1936, and that it is an inedible animal wax not provided for in said section.

Appellant introduced the testimony of four witnesses, three of whom were chemists, and the Government introduced the testimony

of six witnesses, two of whom were chemists, one of the two being a Government chemist.

Samples of the involved merchandise were introduced in evidence by appellant as Exhibits 1, 3, and 4, and each of the parties introduced in evidence chemical analyses of samples of the involved merchandise.

One August T. Hummel, president of the appellant corporation, testified in part as follows:

Q. Mr. Hummel, with what firm are you connected?—A. I am connected with Hummel Chemical Co., Inc., 90 West Street, New York.

Q. What is the business of that company?—A. Importing, buying and selling chemicals and kindred products.

Q. Among other products that you import and sell, is the so-called wool grease one of them?—A. Yes, we import wool grease.

 *      *      *      *      *      *      *

Q. * * * How is this merchandise described on the invoice and entry here?—A. This merchandise is described as wool grease.

Q. Have you, at my request, examined your records to find out how this merchandise was sold, under what designation?—A. Yes, I have.

Q. How was it sold?—A. It was sold as degras.

Q. Explain that apparent discrepancy between the name on the entry and invoice and the name under which you sold it.—A. There are various designations for the material. Although it may vary, it is all one and the same kind of material. It is known as wool grease or wool fat, or wool wax, or degras.

Appellant's witness Ralph W. Bailey, a chemist, testified in part as follows:

Q. Based upon the tests that you made of this sample out of Collective Exhibit 3, would you, as a chemist, say this is an oil or a wax?—A. I would say it is a wax.

 *      *      *      *      *      *      *

By Presiding Judge McCLELLAND.

Q. Would you say it was a chemical distinction or a commercial proposition?—A. No, that is a chemical distinction.

Q. Chemically, what is the difference between wool grease and wax?—A. The difference is that when you saponify an animal wax you split out glycerine, comes out in soap powder. When you split a wax up by its saponification glycerine does not come out in the soap powder. I am using the common terms for the sake of——

Q. Can an article be wool grease, degras, and wax at the same time?—A. Not from a chemical standpoint, no.

Q. How would you say this has been changed from wool grease into wax?—A. *The term "wool grease" is the common designation, but it is not the correct designation from a chemical standpoint.* It is wool wax from a chemical standpoint, speaking as a chemist. [Italics ours.]

Q. What must be done to wool grease to make it result in wax?—A. It is a wax as it stands.

Q. As a basic proposition, as it comes from a sheep, it is a wax?—A. Yes, sir; a wax, not a fat.

By Mr. LERCH.

Q. Explain just how they are different. In other words, will you refer to Collective Exhibit 3 and state what you find there, as distinguished from what

you would find in oils, fats, or greases?—A. Well, in carrying out the ordinary oils, fats, or greases, fatty oils, the saponification value would be very much higher. When saponified as stated, glycerine would be present in the solution.

Q. In what solution?—A. In the acid solution resulting from saponification of this material. If this was a fat, we would get glycerine in the product.

Q. Fat, oil, or grease?—A. Yes, sir; present in the product of saponification.

Q. And you found no glycerine present in this commodity?—A. No, sir.

Q. Any other distinctions you find there?—A. The saponification value was very low compared with ordinary fats, oils, or greases.

Q. You mean—you say it is very low as compared with——A. Fatty oils, fats, and greases.

Q. In other words, is it one of the inherent qualifications of oil, fat, or grease, that it has a high saponification value?—A. It does, yes.

Q. And does this exhibit have that?—A. It has a low saponification value.

Q. Is that one of the distinctions, or one of the qualifications to permit you to determine whether a wax, oil, fat, or grease?—A. It is.

## Upon cross-examination the witness testified:

X Q. Have you ever heard of Collective Exhibit 3, or merchandise like that referred to as a wax on the market?—A. Not usually referred to as a wax on the market. It is not customary to call it that on the market. It is called that in chemical literature on wax.

X Q. In chemistry, how would you refer to an article like Collective Exhibit 3?—A. I would call it a wax.

\* \* \* \* \* \* \*

X Q. I ask you to look at Exhibit 1. After examining Exhibit 1, based upon your experience, I ask you whether or not it is your opinion that Exhibit 1 is unctuous?—A. Yes; I should say it is oily.

X Q. Is Exhibit 1 greasy?—A. Yes, it is greasy to the touch—the general use of that term.

X Q. Can you tell, based upon your experience with merchandise like Exhibit 1 whether or not such merchandise is edible or inedible?—A. I would say it is inedible from general appearance and odor.

Appellant's witness Henry H. High, also a chemist, testified that he had analyzed a sample of the involved merchandise and that it is a wax and not a grease. Upon cross-examination the witness testified:

X Q. How do you define a grease?—A. A grease may be defined, according to Webster's Dictionary as: "Any animal fat which is oily and unctuous, such as tallow, lard, or the soft unctuous fat from any terrestrial animal, but not marine animals." According to my definition of a grease, it is my opinion that any solid or semi-solid animal fat, such as a yellow grease, house grease, and other types of greases are so classified because they are essentially glycerides of fatty acids.

\* \* \* \* \* \* \*

X Q. Would you say that the merchandise analyzed by you, that portion of Exhibit 4 analyzed by you, fell squarely within the terms of the definition of grease contained in Webster's dictionary, as recited by you a few moments ago?— A. Within the terms of Webster's Dictionary, perhaps.

X Q. Yes or no? I mean the question calls for a yes or no answer.—A. Repeat it. [The reporter read the question.] I know what your question is.

\* \* \* \* \* \* \*

182

By Presiding Judge McClelland.

Q. Regardless of any private opinion you might have as a scientist, does it fall within Webster's Dictionary definition of a grease, as you understand it?— A. Not in my opinion.

By Mr. McDermott.

X Q. Why not? What is wrong with Webster's definition?—A. Because Webster's Dictionary definition of a grease is not a scientific definition at all; it is a general definition, which is not accepted by any scientist or chemist.

By Presiding Judge McClelland.

Q. Well, you recognize a difference between the common understanding of the term "grease" and your scientific definition?—A. There is a big difference, yes.
Presiding Judge McClelland. Now, you have got something.

By Mr. McDermott.

X Q. Your opposition to Webster's definition is based upon chemical background?—A. Right.

The testimony introduced upon the part of the Government was in part to the effect that such merchandise as is here involved was commonly and commercially known as wool grease or degras, and not as wool wax.

Dwight A. Bartlett, a chemist, testified in part as follows:

Q. Now, Dr. Bartlett, can you give us your definition of a grease?—A. I would say greases are substances which are soft, unctuous; they are generally softer than fats, and are commonly called greases.

Q. Are you able to express an opinion, based on your analysis of exhibit 1 and your experience with wool grease, whether or not exhibit 1 is a grease?

\*        \*        \*        \*        \*        \*        \*

The Witness. Yes, sir.

By Mr. Weeks.

Q. What, in your opinion, is Exhibit 1?—A. It is an animal grease.
Q. I think you have already testified that you are familiar with a commodity known as wool wax?—A. Yes, sir.
Q. You have made analyses of wool wax?—A. Yes, sir.
Q. Have you ever read in the literature on the subject about wool wax?—A. Yes, sir.
Q. Are you able to express an opinion as to whether exhibit 1 is or is not a wool wax?

\*        \*        \*        \*        \*        \*        \*

A. Yes.
Q. What is your opinion?—A. Could I amplify that a little bit?
Q. I am asking you for your opinion.—A. In my opinion it is not wool wax.
Presiding Judge McClelland. Why, Doctor?
The Witness. There is a commodity—Because it is commonly known as wool grease. Now, the scientists have tried to distinguish between waxes and fats by chemical composition. They say that fats are combinations of glycerine and fatty acids, whereas all waxes,—that is, animal and vegetable waxes I am talking about,—are combinations of fatty acids with high molecular alcohols—fatty alcohols. Following that definition, which is not the common definition, wool grease is a wax, because it is a combination, essentially a combination of fatty acids and high molecular alcohols. In the same way they would call sperm oil a

wax, because sperm oil is a combination of fatty acids and high molecular fatty alcohol. In the same way they call Japan wax a fat, and they call——

Presiding Judge McClelland. Do you mean that the terms "fat" and "grease" are synonymous?

The Witness. No, sir. Grease is softer than a fat. They would call Japan wax a fat, because that is a combination of fatty acids and glycerine. In other words, all fatty substances are combinations of fatty acids and glycerine, whereas all waxes are combinations of fatty acids of high molecular alcohol. But I say that is just a distinction that the scientists have tried to make, and it is not generally accepted. I mean it is not accepted as a common definition of fats and waxes.

Presiding Judge McClelland. You think it would be a wrong distinction?

The Witness. I think it would be a very good distinction if it were accepted. It is confusing the way it is now.

Upon cross-examination the witness testified:

X Q. Doctor, at the outset of your testimony you admitted that exhibit 1 was, in your judgment as a chemist, a wax, did you not?—A. I don't remember making any such statement.

X Q. Let's hear whether you do now or not? Is it a wax, chemically?—A. According to the scientific definition it is a wax.

X Q. To you, as a chemist, is it a wax?—A. No, sir.

X Q. Why is it not a wax?—A. Because it hasn't got the consistency of a wax, and it is not commonly called a wax.

\*    \*    \*    \*    \*    \*    \*

Hugh Christison, a chemist, testified respecting wool grease that "From a practical point of view it is not a wax, but from a scientist's point of view it is a wax."

The testimony on behalf of the Government also shows that wool grease is used for a number of purposes, among them, in the oil industry, the soap industry, in flypaper manufacture, in the paint and ink industries, and in other industries.

Gunther H. Schmitz, a chemist, testified in behalf of appellant on rebuttal that, as a chemist, he regarded wool grease as a wax.

Most of the testimony in the record is upon the point of whether wool grease, from a chemical standpoint, is an animal grease or an animal wax.

It is appellant's contention that the imported merchandise, commonly and scientifically, is a wax and not a grease. In support of this contention it relies upon the testimony in the record, which, of course, is only advisory to the court, and it also relies upon scientific authorities as supporting its contention.

It is well established that in the interpretation of tariff laws words are to be taken in their commonly received and popular sense, or according to their commercial designation if that differs from the ordinary understanding of the word. *Lutz* v. *Magone*, 153 U. S. 105. It is also well established that tariff laws are not drafted in the terms of science, but in the language of commerce, which is presumptively that in common use. *Meyer & Lange et al.* v. *United States*, 6 Ct.

Cust. Appls. 181, T. D. 35436; *United States* v. *Merck & Co.*, 8 Ct. Cust. Appls. 171, T. D. 37288.

It is also well established that expert testimony as to the chemical or scientific meaning of a tariff term is of no probative value where the scientific meaning differs from the common meaning. *Bakelite Corporation et al.* v. *United States*, 16 Ct. Cust. Appls. 378, T. D. 43117.

Finally, upon these general propositions of law, it is elementary that testimony as to the common meaning of a tariff term is only advisory to the court, for the court takes judicial notice of such meaning.

We are convinced that wool grease is regarded by scientists generally, from a chemical standpoint, as an animal wax, because of its chemical properties; but we are also convinced that it is popularly and ordinarily understood to be an animal grease, and we think the testimony on behalf of appellant confirms this.

One of the scientific authorities relied upon by appellant is Dr. J. Lewkowitsch, and appellant quotes from his work entitled "Chemical Technology and Analysis of Oils Fats and Waxes" in support of its contention that wool grease is chemically a wax. It is interesting to observe that in this work, published in 1909, the author, in beginning his discussion of the subject headed "Wool Wax [1] (Wool Grease)," states:

> The term *wool wax* was proposed by the author for the *neutral portion* of raw wool fat, "wool grease," and has now been adopted by modern writers. [Last italics ours.]

The author then proceeds to describe wool grease as follows:

> *Wool fat, Wool grease, Recovered grease, Brown grease* * * * is the *natural grease* contained in sheep's wool. In the course of preparing the raw wool for spinning, this grease is removed by means of dilute soap (or sodium carbonate) solutions, * * * or by extraction with volatile solvents. * * * [Last italics ours.]

It is interesting to observe that in the above quotation the author clearly indicates that wool grease comes within the common meaning of the word "grease."

To a like effect is the Chemical Dictionary by Hackh. In his definition of "wool" we find the following: "* * * It contains about 40% of a grease consisting chiefly of cholesterol."

Appellant also relies upon an article in the Encyclopaedia Britannica, 14th edition, vol. 16, p. 745 *et seq.*, wherein, under the heading "Oils, Fats and Waxes," it is stated:

> * * * The most important animal wax is beeswax (q. v.), collected in almost all parts of the world. An exceptional position is occupied by wool-wax, the main constituent of the natural wool fat that covers the hair of sheep, which is obtained as a by-product in scouring raw wool. Wool-fat is purified on a large scale and brought into commerce, under the name *lanolin*, as an ointment, which is valued for its property of easy assimilation by the skin.

It is interesting to note that the article also states on the same page that:

* * * In their physical properties the natural waxes resemble the fats. They behave similarly towards solvents, and in the liquid condition leave a grease-spot on paper. * * *

Webster's New International Dictionary, 2d edition, defines "wool fat *or* grease" as follows:

A fatlike substance coating the surface of the fibers of sheep's wool, extracted by organic solvents or by scouring with soap. * * * Wool fat actually belongs rather to the waxes than to the fats, since it contains chiefly esters of cholesterol and other higher alcohols with certain fatty acids, together with free fatty acids, a small amount of free alcohols, etc. * * *

Funk & Wagnalls New Standard Dictionary has the following definition of "wool-grease":

A fatty substance of a brown color and viscous consistency, extracted from wool-washings, consisting of cholesterin and other fats and volatile fatty acids. * * *

The same authority defines "grease" as:

1. Animal fat, especially when soft; any fatty, oily, or unctuous substance; * * *

It is our opinion that Congress intended that such merchandise as is here involved should, for tariff purposes, be regarded as an inedible animal grease, and that by the term "wool grease" a particular kind of grease was described.

In the Summary of Tariff Information, 1920, p. 69, prepared for the use of the Ways and Means Committee in the preparation of the legislation which became the Tariff Act of 1922, we find the following:

### WOOL GREASE (DEGRAS), LANOLIN

Description and uses.—Wool grease is the fatty substance which is present in raw wool. It may be recovered either by extraction with naphtha, or from the wool scouring by means of either centrifugal or acid treatment. In this country the centrifugal process is the one used in most plants. In the United States crude, brown wool grease is also known as degras.

Lanolin, a highly purified wool grease, is a yellowish white mass which takes up water readily. It is used principally in pharmacy as a basis for salves, ointments, emulsions, cosmetics, and for softening leather. Crude wool grease is used principally for dressing leather; sometimes as a lubricating grease; also, to some extent, in making printing ink and in the varnish industry.

The Summary of Tariff Information 1929, p. 264, contains the following:

### WOOL GREASE (DEGRAS) AND ADEPS LANAE

Description and uses.—Wool grease is the fatty substance which is present in raw wool. It may be recovered from the wool by extraction with gasoline or by either centrifugal or acid treatment of the scouring liquors. Crude wool grease

is used principally for dressing leather, and sometimes as a lubricating grease. In the United States crude brown wool grease is also known as degras.

In paragraph 1101 of the Tariff Act of 1930 wool in the grease is referred to, and in paragraph 1102 a special dutiable provision is provided for wool in the grease.

In the case of *Koechl* v. *United States*, 3 Ct. Cust. Appls. 316, T. D. 32619, this court stated:

The merchandise involved in the controversy is known to the Pharmacopoeia and the Dispensatory as adeps lanae, which is the scientific designation and Latin equivalent for "wool grease." Hydrous adeps lanae is that which carries water in suspension and anhydrous that from which all water has been expelled. Wool grease is the fatty substance which results from the washing of the wool. This fatty substance, just as it comes from the wool, contains some free potash and is mixed with dirt, water, and other foreign matter derived from the substances employed as cleansing materials. The mixture is drawn off into tanks and when relieved of the dirt, excess water, and alkalies derived from the agencies used in washing the wool, it becomes degras or raw wool grease, which normally contains some fatty acids and free potash. Raw or crude wool grease is used for stuffing leather and for the manufacture of lubricating greases.

We have no hesitation in holding that the merchandise here involved falls under the common meaning of the term "grease"; and whether or not, from a scientific standpoint, it is regarded as a wax, is immaterial.

Even scientists, as hereinbefore indicated, regard wool grease as a grease, as commonly understood, although from a chemical standpoint it appears to be regarded as a wax.

We agree with the trial court that the merchandise at bar falls within the common understanding of what constitutes a grease, although scientifically it may be known as, and have the characteristics of, a wax; further, that Congress intended by the use of the term "indelible animal greases" to include such merchandise as is here involved.

The judgment of the United States Customs Court is *affirmed*.