PLANT PRODUCTS CORPORATION *v.* UNITED STATES (No. 4890)[1]

[1] C. A. D. 658.

United States Court of Customs and Patent Appeals, May 7, 1957

*Eugene R. Pickrell (Richard F. Weeks of counsel)* for appellant.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Murray Sklaroff*, trial attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn (James F. Donnelly*, Esq., of counsel) *amici curiae.*

[Oral argument April 4, 1957, by Mr. Weeks, Mr. FitzGibbon, and Mr. Donnelly]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, C. D. 1781, overruling the importer's protest and sustaining the collector's classification of certain merchandise as a coal-tar product dutiable under the provisions of paragraph 27 (a) (3) of the Tariff Act of 1930 at the rate of 40 per centum ad valorem and 7 cents per pound. The importer contended the merchandise should be classified as a chemical compound not specially provided for under paragraph 5 of the Act, or, alternatively, as an ester under paragraph 37. Only the latter is urged here.

The pertinent portions of the competing paragraphs read:

Par. 27 (a) (3).—all products, by whatever name known, which are similar to any of the products provided for in this paragraph or in paragraph 1651, and which are obtained, derived, or manufactured in whole or in part from any of the products provided for in this paragraph or in paragraph 1651;

Par. 5. All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

Par. 37. Ethers and esters: * * * ; and ethers and esters of all kinds not specially provided for, 25 per centum ad valorem: * * *

The unquoted portions of paragraphs 27 and 1651 include lists specifically naming a large number of coal-tar products.

The merchandise is an insecticidal compound known as Parathion. It is stipulated that the empirical chemical formula of the compound is $C_{10}H_{14}NO_5PS$, and that it is obtained, derived and manufactured in part from nitrophenol, which is one of the products named in paragraph 27 (a) (1) of the Tariff Act. Parathion thus satisfies the requirements of paragraph 27 (a) (3) as to its derivation or manufacture, but appellant urges that it cannot properly be classified under that paragraph because it is not a coal-tar product and is not similar to any of the products provided for in paragraphs 27 and 1651. The

Customs Court overruled those contentions and held that the merchandise is a coal-tar product similar to products named in paragraphs 27 and 1651 and properly classifiable under paragraph 27 (a) (3).

The record shows that between one-third and one-half, by weight, of Parathion is derived from coal-tar. Apparently the only use of the product is as an insecticide and it is normally sprayed on living, non-dormant plants. The evidence whether it derives its efficacy as an insecticide from the coal-tar or non-coal-tar constituents is somewhat conflicting, and consists only of opinions, since no comparative tests of the two portions were made. The testimony was carefully and, we think, properly analyzed by the Customs Court. We agree with the conclusion reached that the insecticidal properties of Parathion are due to the molecule as a whole, and that the coal-tar portion is essential to such properties.

In considering appellant's contention that Parathion is not a coal-tar product within the meaning of paragraph 27, it is to be noted that nitrophenol, which is admittedly a coal-tar product, is an essential ingredient in the manufacture of Parathion. The fact that Parathion contains ingredients which were not derived from coal-tar is not, in itself, sufficient to prevent it from being a coal-tar product, since the record shows that a number of the substances listed *eo nomine* under the heading "coal-tar products" in paragraph 27 contain substantial quantities of ingredients not derived from coal-tar. Moreover, the provision in paragraph 27 (a) (3) for products derived or manufactured "in whole or *in part* from any of the products provided for in this paragraph," clearly seems to contemplate the inclusion of ingredients not derived from coal-tar. (Italics ours.)

In the instant case, as above noted, the record shows that at least one-third of Parathion is derived from coal-tar and that the portion so derived is essential to its proper functioning as an insecticide. Under such circumstances we conclude that Parathion is a coal-tar product within the meaning of paragraph 27 of the Tariff Act of 1930.

It is also contended by appellant that paragraph 27 is limited to coal-tar "intermediates," that is, products used for making various final products, such as those provided for in paragraph 28, and that, accordingly, Parathion, which admittedly is a final product having no use as an intermediate, cannot properly be classified under paragraph 27.

While it appears to be true that most, if not all, of the products provided for *eo nomine* by paragraph 27 are useful as intermediates, the record shows that an umber of them are also useful as final products. Thus, there is evidence that naphthalene is widely used as an insect repellant, and the Summary of Tariff Information, 1929, page 134, states that phenol is an important antiseptic and disinfectant. Moreover, it is stated in the 1921 Summary of Tariff Information, page

75, that "On purification many intermediates are used directly as drugs, perfumes and flavors." It is evident, therefore, that the mere fact that a substance may be useful as a final product does not necessarily exclude it from classification under paragraph 27.

The best evidence of the meaning of a statute is, of course, the language of the statute itself, and that language is given its ordinary meaning in the absence of any clear reason to the contrary. *Caminetti* v. *United States*, 242 U. S. 470. In *Bakelite Corporation et al.* v. *United States*, 16 Ct. Cust. Appls. 378, T. D. 43117, the meaning of paragraph 27 of the Tariff Act of 1922, which corresponds closely to paragraph 27 of the 1930 Act, was considered and it was held that the word "product" as there used, must be given its ordinary meaning, which was said to be as follows:

Product: 1. Anything produced as by generation, growth, labor or thought, or by the operation of involuntary causes; as, the products of the season, or of the farm. The products of manufactures; the products of the brain. (Webster's New International Dictionary, 1925).

No reason appears for adopting a different interpretation in the instant case. If it had been the intention of Congress to limit paragraph 27 of the 1930 Act to intermediates, it would have been a simple matter to do so by express language. Since that was not done, and the broader word "product" was used, it must be presumed that a broader meaning was intended. The legislative history relied on by appellant has been considered but, in our opinion, it goes no further than to show a recognition by Congress that paragraph 27 included intermediates. It does not justify a holding that, contrary to the ordinary meaning of the language of the paragraph, Congress intended to include only intermediates under the term "product."

A further indication that paragraph 27 does not exclude finished products is found in the fact that paragraph 27 (a) (5) includes "All the foregoing products not colors, dyes or stains * * * and *not specially provided for in paragraph 28* or 1651." (Italics ours.) The quoted language clearly suggests that a product may be classified under either paragraph 27 or paragraph 28, depending on whether there is an express provision for it in the latter paragraph. Such alternative classification would not be proper if, as alleged by appellant, paragraph 27 is limited to intermediates and paragraph 28 to final products.

In *Kuttroff, Pickhardt & Co., Inc.* v. *United States*, 21 C. C. P. A. (Customs) 332, T. D. 46864, we said

* * * It will be noted that the first words in said paragraphs 27 and 28 are "coal-tar products;" and that following this term is a recital, in great detail, of the different articles and materials which it [Congress] sought to bring within the paragraphs. A study of the two paragraphs and the act as a whole prompts the conclusion that Congress was anxious to include within the said paragraphs most,

if not all, coal-tar products, except those which were provided for elsewhere in the act. To accomplish this purpose it named definitely a great number of articles and materials, and then, by several general, comprehensive catch-all provisions, further greatly broadened and enlarged the scope of the paragraphs.

While the quoted language was used with respect to the 1922 Act, we think it equally applicable to the corresponding paragraphs of the 1930 Act.

It is to be noted that paragraph 28 contains no basket clause and that the "general comprehensive catch-all provisions" referred to in the *Kuttroff* decision are found only in paragraph 27. Under such circumstances the Congressional intent of including in paragraphs 27 and 28 most if not all coal-tar products not elsewhere provided for could not be made effective unless the basket clauses of paragraph 27 are construed to cover non-enumerated coal-tar products of the kind named in both paragraphs 27 and 28. That such a practice has been followed appears from the 1948 Summary of Tariff Information, Volume 1, part 2, page 58, where it is stated that

While most finished coal-tar products are provided for specifically in paragraph 28, the products under consideration in this summary are not included in that paragraph, and an increasing number of finished coal-tar chemicals have been classified for duty under paragraph 27 (a) which contains a general provision for unspecified coal-tar products. Among the more important (i. e., important in domestic production, not in imports) groups of finished products so classified are the coal-tar surface-active agents, plasticizers, rubber-processing chemicals and *insecticides*. (Italics ours.)

In view of the foregoing, we are of the opinion that paragraph 27 in general, and paragraph 27 (a) (3) in particular, is not limited to products which are useful as intermediates. Accordingly, the fact that Parathion is useful only as a final product is not fatal to its classification under the latter paragraph, although it may be pertinent to the question whether it is similar to the products provided for *eo nomine* in paragraph 27, within the meaning of paragraph 27 (a) (3).

In *Charles Hardy, Inc.* v. *United States*, 21 C. C. P. A. (Customs) 173, T. D. 46509, it was held that the word "similar" in paragraph 27 (a) (3) of the Tariff Act of 1930 should be given its common meaning as defined by standard dictionaries, "and as that word has been defined by this court when used in tariff statutes in the case of *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714." That case, as noted by appellant, contains the statement that

In view of the common meaning of the word "similar," and of the authorities cited, we are of the opinion, and so hold, that if goods are made of approximately the same materials, are commercially interchangeable, are adapted to substantially the same uses and are so used, ordinarily they are similar within the meaning of section 402 (b).

It is to be noted that the section 402 (b), referred to in the quotation, related to similarity for purposes of valuation, rather than of classi-

fication. As was pointed out in *United States* v. *Freitag & Sons, Inc., et al.*, 21 C. C. P. A. (Customs) 500, T. D. 46961, the test of similarity applied in valuation and classification cases is not the same, and while an element of similarity in one instance may also be an element of similarity in the other, "yet an article similar for one purpose might be wholly dissimilar for another." Also, in *United States* v. *Morganite Brush Co.*, 18 C. C. P. A. (Customs) 90, T. D. 44063, it was said that "similarity for dutiable purposes" is "a very different proposition from the question of similarity for value purposes."

In *United States* v. *R. W. Cramer & Co.*, 21 C. C. P. A. (Customs) 379, T. D. 46911, the following definition of "similar" was applied in determining a question of classification:

Similar. a. 1. Nearly corresponding; resembling in many respects; somewhat like; bearing a general likeness.

Appellant's brief gives the following additional definitions:

Similar * * * 1. Nearly corresponding; resembling in many respects; somewhat like; having a general likeness. [Webster's New International Dictionary, 1933 Edition].

Similar * * * 1. Bearing resemblance to something else; being like in quality, nature, degree, purpose, or other characteristics, but not the same or identical; as, men with similar features. The governments of the thirteen states were all similar, and the political ideas of one were perfectly intelligible to all the others.

The quoted definitions set forth the common or ordinary meaning of the word "similar" which is to be applied in classification cases such as the instant one, but it is clear that they allow a wide range in interpretation. The only thing they establish with certainty is that similar articles must be alike in some respects and different in others. The degree may vary from "resembling in many respects" to being merely "somewhat like" or "like in quality, nature, degree, purpose, or other characteristics." It is evident, therefore, that no hard and fast rule can be laid down, but that the exact degree of likeness required to constitute similarity in any particular case must be a matter of opinion based on consideration of the particular circumstances involved.

Parathion resembles the products provided for *eo nomine* in paragraph 27 in that it is derived from one of them (nitrophenol), and that such derivation is essential to the insecticidal properties which give it its principal, if not its only utility. Chemically, as shown by the record, Parathion contains a benzenoid structure and, in that respect, resembles the products named in paragraph 27, all of which include a benzenoid or modified benzenoid structure. In use, Parathion is effective as an insecticide; and the record shows that many of the products named in paragraph 27 have insecticidal properties. There is not sufficient evidence of record to show clearly how Parathion compares physically with the products named in paragraph 27.

Appellant emphasizes the fact that Parathion is used as an insecticide on living, non-dormant plants and contends that none of the products named in paragraph 27 are used in that manner. Assuming that to be the case it would not, in our opinion, be sufficient to show that Parathion does not resemble such named products as to use. While it may well be considered that there is a basic difference between products which kill insects and those which merely repel them, it seems reasonable to regard all products which kill them as being generally equivalent, whether they are sprayed on dormant or non-dormant plants and whether they kill by contact, fumigation, or stomach poisoning. The final result is the same in each case and the particular insecticide selected will naturally depend on adaptability to the specific environment in which it is to be used.

We are of the opinion there is sufficient similarity between Parathion and the products provided for *eo nomine* in paragraph 27 (a) (3) to satisfy the requirements of that paragraph, and that appellant has failed to sustain its burden of showing that the collector erred.

It is not disputed that Parathion is an ester and as such falls within the broad language of paragraph 37. It is, however, more specifically provided for in paragraph 27 (a) (3), particularly in view of the fact that paragraph 37, by its terms, includes only those esters which are not specifically provided for elsewhere.

The decision of the United States Customs Court is *affirmed*.

JACKSON, J., Retired, recalled to participate herein in place of COLE, J., absent because of illness.