(C.D. 2439)

Brown Boveri Corp.
Gehrig Hoban & Co., Inc. } v. United States

United States Customs Court, Second Division

(Decided April 2, 1964)

Barnes, Richardson & Colburn (E. Thomas Honey of counsel) for the plaintiffs.
John W. Douglas, Assistant Attorney General (Alfred A. Taylor, Jr., trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: In this action, plaintiffs contend that certain merchandise, described on the invoice as an "air-blast circuit breaker," was improperly classified under the provisions of paragraph 353 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, as switchgear and assessed with duty at the rate of 17½ per centum ad valorem.

The importer herein contends that said merchandise is properly subject to duty under the provisions of said paragraph, as modified, supra, as articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, which is subject to duty at the rate of 15 per centum ad valorem. It is alternatively claimed that said merchandise is dutiable under said paragraph, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as articles having as an essential feature an electrical element or device, at the rate of 13¾ per centum ad valorem. The latter claim is not pressed.

The pertinent portion of paragraph 353 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*, is as follows:

Articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, and articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs; all the foregoing (not including electrical wiring apparatus, instruments, and devices), finished or unfinished, wholly or in chief value of metal, and not specially provided for:

Switches and switchgear which are not wiring apparatus, instruments, or devices; fans; blowers; and washing machines_____ 17½% ad val.

\* \* \* \* \* \* \*

Other articles * * * _____ 15% ad val.

This case was originally tried and submitted but, subsequently, was the subject of an order setting aside the submission of the case and restoring it to the calendar for the purpose of amplifying and clarifying the record. The clarification sought by the court arose from the testimony of plaintiffs' witness, Werner R. Streuli, who was also a witness in the case of *Brown Boveri Corp.* and *Gehrig Hoban & Co., Inc.* v. *United States*, 40 Cust. Ct. 168, C.D. 1978, and whose testimony covered the term "switchgear," which term is also involved herein.

The record in this case consists of a stipulation entered into between counsel for the respective parties that said merchandise was wholly or in chief value of metal, the testimony of one witness called on behalf of plaintiff, and the receipt in evidence of three exhibits.

The witness, Mr. Streuli, testified that he is senior vice president of the importer herein and a graduate electrical engineer; that he is familiar with the imported merchandise, which consists of 3 pole air-blast circuit breakers, designated as DHVF 150 and DHVF 30; that illustrative exhibits 1 and 2 illustrate circuit breakers DHVF 150 and DHVF 30, respectively; that the DHVF 150 has 3 separate phase units, each of which has a tank at the bottom, approximately 15 feet long, and the unit is approximately 10 to 12 feet high; that the 3 units make up 1 complete circuit breaker; that the DHVF 30 consists of a single tank, approximately 10 to 12 feet long, while the unit is less than 10 feet high; that the DHVF 150 has a rated carrying current of 1,600 or 2,000 amperes and is built for a system voltage of 138,000 volts; that it has an interrupting rating of about 10 million kilo volt amperes; that the DHVF 30 has the same current rating, but is made for a system voltage of 30,000 volts and an interrupting rating of about 2 million kilo volt amperes; that the air-blast circuit breakers involved are used exclusively in power installations and are installed in what is known as substations, in order to protect the system against overload; that the current flowing through the breaker passes through

a relay, which is usually installed on a control board in a control room, and, if the current goes too high, the relay begins to move and closes the contacts which cause the air-blast circuit breaker to trip or open; that the air-blast circuit breakers consist of two conductive rods through which the current flows; that, in the event of an overload, the relay causes the two rods to draw apart, opening the circuit, but the current continues to flow through an arc which is formed between the two rods; by blowing compressed air into this arc, the arc is extinguished and the current is interrupted; that switches, having the same rating as the circuit breaker, are installed at either side of the circuit breaker to enable proper maintenance. The witness further stated that switches and circuit breakers are entirely different pieces of equipment; that circuit breakers are bought and sold as such and never as switches; that air-blast circuit breakers are never used as mechanisms to operate such switches and are not used for the control of motors; that they are suitable for controlling the flow of electrical energy; that the operation of a circuit breaker is not similar to the operation of a switch, the latter being operated manually, while the former is automatic; that a circuit breaker is used to interrupt the flow of current, primarily to prevent damage to the system which might occur due to excessive current, whereas a switch deenergizes the circuit breaker after the circuit has been opened.

At the rehearing, Mr. Streuli, who was also a witness in C.D. 1978, *supra*, indicated that, in his testimony in the former case, he had used the term "switchgear" in a broad sense, having made the following statement:

Well, it would include a large variety of equipment. It would include conductors, instruments of all kinds, paneling boards made from steel or marble, a lot of equipment mounted thereon and behind and interconnected. It would, in the broad meaning of the term, include switches, whatever that is, that would include certain circuit breakers; it would include certain types of transformers, although not what is generally known as transformers. It would include meter transformers or instrument transformers; they are sometimes called instrument transformers. That would be the widest usage of the term as we use it frequently.

He made the further comment, with respect to the specific meaning of the term "switchgear," as follows:

* * * in other instances it would be used to describe a device which is required to operate switches, for instance, railroad switches, or electrical switches, which for some reason, cannot be operated by direct manpower.

The witness did not feel that his testimony in the decided case conflicted in any sense with the testimony given herein, since he utilized the term "switchgear" in the former case in a broad sense.

In the *Brown Boveri* case, *supra*, the court, in its decision, made the

following observations and quoted from the record, which is particularly pertinent herein:

A switch is a device by which the flow of electricity can be interrupted. It is not ordinarily an automatic device. A circuit breaker is something that has the same function, but operates automatically. To illustrate the uses of a switch or switchgear, the witness stated:

If we take power over the terminals of a generator by means of wires that usually terminates at a circuit breaker, from that circuit breaker, we go to a busbar which is kind of a collector so-to-say for the power that comes off the generator and then from this busbar, we have a number of lines which go out to the various customers and that process is repeated again and again. Now, an aggregate installation compressing [sic] a breaker and buses and more breakers at the beginning of lines, I would call that switchgear.

It is always customary in electrical engineering to associate a switch with a circuit breaker because circuit breakers are automatic devices which need maintenance. Consequently, they must be separated from the power line, and, in order to do that, a switch is used.

Based upon his knowledge of the uses of switchgear and voltage regulators, the witness was of the opinion that voltage regulators are not switchgear; that the two articles perform two different functions.

The witness was asked:

What does a voltage regulator do that a switchgear does not perform?

THE WITNESS: Switchgear takes the power from a generator and distributes it with the necessary safety devices, like a breaker. The voltage regulator has nothing to do with that function. A generator could actually function without the voltage regulator.

That case involved voltage regulators and the court therein, in arriving at its conclusion, cited the case of *Federal Electric Products Co.* v. *United States*, 35 Cust. Ct. 47, C.D. 1720, and quoted the following dictionary definitions:

Webster's New International Dictionary, 1950 edition:

switchgear, *n.* * * * *Elec.* The mechanism used to operate large switches.

switch, *n.* * * * 5. *Elec.* A device for making, breaking, or changing the connections in an electric circuit.

Funk & Wagnalls New Standard Dictionary of the English Language, 1942 edition:

switch, *n.* 1. * * * Electric switches are sometimes named (1) from their operation, or the purpose they serve; as changing switch (changing a circuit from one source to another), * * *. S.-gear, *n.* The mechanism that works a switch, especially of a railway-switch.

The same authorities give the following definitions of the terms "voltage regulator" and "regulator":

voltage regulator. *Elec.* A form of transformer having its primary winding in shunt and its secondary winding in series with an alternating-current circuit the voltage of which may be regulated by varying the voltage ratio of transformation. [Webster's New International Dictionary, 1950 edition.]

regulator, * * * 5. *Elec.* * * * (3)   A device for keeping at constant strength the current produced by a dynamo.   [Funk & Wagnalls New Standard Dictionary of the English Language, 1942 edition.]

Based upon the dictionary definitions and the testimony of the witness, the court concluded that the voltage regulators involved in said C.D. 1978 were not a switch or switchgear.

In cases involving the common meaning of terms, the testimony of expert witnesses is merely advisory, since the common meaning of the term is a question of law to be determined by the court.   *United States,* v. *O. Brager-Larsen,* 36 CCPA 1, C.A.D. 388.   In ascertaining the common meaning, the court may resort to the use of lexicographic and technical information.

In the case at bar, it is apparent that the involved circuit breakers are utilized in the field of electrical power which, of course, is distinguishable from various other fields of electronics or electricity.   In Kent's Mechanical Engineers' Handbook, twelfth edition, the following definition is contained under the heading "switchgear":

Switchgear is a general term covering switching, interrupting, control, metering, protective and regulating devices, also assemblies of those devices with associated interconnections, accessories, and supporting structures for use in connection with the generation, transmission, distribution, and conversion of electric power.

In Chamber's Technical Dictionary, revised edition, the following definition of "switchgear" is contained therein:

The generic name for that class of electrical apparatus whose sole function is to open and close electric circuits.

The Standard Industrial Classification Manual—1957—issued by the Executive Office of the President, Bureau of the Budget and prepared by the Technical Committee on Industrial Classification, Office of Statistical Standards, under Industry No. 3613, entitled "Switchgear and switchboard apparatus," states as follows:

Establishments primarily engaged in manufacturing switchgear and switchboard apparatus.   Important products of this industry include power switches, circuit breakers, power switching equipment, and similar switchgear for general industrial application; switchboards and cubicles, control and metering panels, power fuse mountings, and similar switchboard apparatus and supplies. * * *

Notwithstanding the testimony of Mr. Streuli, which is in any event advisory, and based upon the holding in the *Federal Electric Products* case, *supra,* that circuit breakers are switchgear, and also taking into consideration the technical definitions given above, we are of the opinion that the involved circuit breakers fall within the purview of the common meaning of the term, "switchgear," as utilized in paragraph 353, as modified, *supra,* as classified.

The protest is, accordingly, overruled.

Judgment will be issued accordingly.