BROWN BOVERI CORP., GEHRIG HOBAN & CO., INC. v. UNITED STATES (No. 5177) * 1

---

*C.A.D. 870
1 Petition for rehearing denied April 14, 1966.

United States Court of Customs and Patent Appeals, February 17, 1966

*Barnes, Richardson & Colburn* (*E. Thomas Honey*, of counsel) for appellants. *John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Arthur H. Steinberg* for the United States.

[Oral argument November 1, 1965 by Mr. Honey and Mr. Steinberg]

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Associate Judges

WORLEY, Chief Judge, delivered the opinion of the court:

At issue here is ▇▇ whether the collector properly classified certain air-blast circuit breakers under paragraph 353 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, as "switchgear," assessing duty at 17½ per centum ad valorem.

The Customs Court (C.D. 2439) dismissed the importers' protest that the circuit breakers were dutiable under the broader provisions of the same paragraph of the Tariff Act as "other articles" suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, dutiable at 15 per centum ad valorem.

Paragraph 353, in pertinent part, reads:

> Articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, and articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs; all the foregoing (not including electrical wiring apparatus, instruments, and devices), finished or unfinished, wholly or in chief value of metal, and not specially provided for:
>
>> Switches and switchgear which are not wiring apparatus, instruments, or devices; fans; blowers; and washing machines_____ 17½% ad val.
>>
>> \*      \*      \*      \*      \*      \*      \*
>>
>> Other articles (except machines for determining the strength of materials or articles in tension, compression, torsion, or shear; flashlights; batteries; vacuum cleaners; and internal-combustion engines_ 15% ad val.

The circuit breakers are large units [2] used exclusively in power installations and installed outdoors in sub-stations to protect the power system against overloads. They are installed for operation through separate relays which act automatically in response to excess current conditions in the circuit breakers to cause the breakers to open. Such opening involves drawing apart two conducting members which normally are in contact to permit current flow therethrough. When the conductors are thus drawn apart because of excess current conditions, current continues to flow between the conducting members in the form of an arc, and compressed air is blown into the arc to extinguish it and thereby interrupt the current. Manually controlled switches having the same rating as the circuit breaker are installed on either side of the breaker to permit its being electrically isolated when maintenance work is to be done on it.

The single witness, a vice-president of Brown Boveri Corp., and a graduate electrical engineer, stated that switches and circuit breakers are entirely different pieces of equipment; that circuit breakers are bought and sold as such and not as switches; that air-blast circuit breakers are not used as mechanisms for the control of motors; and that switches are not automatically operated in response to current conditions but are manually operated.

It being apparent that the present circuit breakers fit within the broad designation in paragraph 353 of articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, the question is whether they further fit within the sub-designation in that paragraph including "Switches and switchgear which are not wiring apparatus, instruments, or devices," or must be considered "other articles" thereunder. Resolution of that question requires us to decide which of two definitions of different scope advanced by the parties should be accepted for "switchgear." [3]

The importers' witness acknowledged that he had testified in a previous case, *Brown Boveri Corp., Gehrig Hoban & Co., Inc.* v. *United States*, 40 Cust. Ct. 168, C.D. 1978, there defining switchgear in a broad sense. Concerning such definition, he said:

Well, it would include a large variety of equipment. It would include conductors, instruments of all kinds, paneling boards made from steel or marble, a lot of equipment mounted thereon and behind and interconnected. It would, in

[2] Two different types of circuit breakers are involved. One, having a rated carrying current of 1600 or 2000 amperes, is built for a system voltage of 138,000 volts and has an interrupting rating of about 10 million kilovolt amperes. The other has the same current rating but is made for a system voltage of 30,000 volts and has an interrupting rating of about 2 million kilo volt amperes. They are both about 10 feet high and 10 feet or more in length.

[3] Appellant has not argued that the imported articles are "wiring apparatus, instruments, or devices" which Congress has seen fit to exclude from the term "switchgear."

the broad meaning of the term, include switches, whatever that is, that would include certain circuit breakers; it would include certain types of transformers, although not what is generally known as transformers. It would include meter transformers or instrument transformers; they are sometimes called instrument transformers. That would be the widest usage of the term as we use it frequently.

He further testified that "switchgear" also has a more specific meaning, stating:

* * * in other instances it would be used to describe a device which is required to operate switches, for instance, railroad switches, or electrical switches, which for some reason, cannot be operated by direct manpower.

The Customs Court discussed that testimony along with the following dictionary definitions:

Webster's New International Dictionary, 1950 edition:

> Switchgear, n. * * * Elec. The mechanism used to operate large switches.
> Switch, n. * * * Elec. A device for making, breaking, or changing the connections in an electric circuit.

Funk & Wagnalls New Standard Dictionary of the English language, 1942 edition:

> Switch, n. 1. * * * Electric switches are sometimes named (1) from their operation, or the purpose they serve; as changing switch (changing a circuit from one source to another), * * *. S-gear, n. The mechanism that works a switch, especially of a railway switch.

It also noted:

* * * In Kent's Mechanical Engineers' Handbook, twelfth edition, the following definition is contained under the heading "switchgear":

> Switchgear is a general term covering switching, interrupting, control, metering, protective and regulating devices, also assemblies of those devices with associated interconnections, accessories, and supporting structures for use in connection with the generation, transmission, distribution, and conversion of electric power.

In Chamber's Technical Dictionary, revised edition, the following definition of "switchgear" is contained therein:

> The generic name for that class of electrical apparatus whose sole function is to open and close electric circuits.

The Standard Industrial Classification Manual—1957—issued by the Executive Office of the President, Bureau of the Budget and prepared by the Technical Committee on Industrial Classification, Office of Statistical Standards, under Industry No. 3613, entitled "Switchgear and Switchboard apparatus," states as follows:

> Establishments primarily engaged in manufacturing switchgear and switchboard apparatus. Important products of this industry include power switches, circuit breakers, power switching equipment, and similar switchgear for general industrial application; switchboards and cubicles, control and metering panels, power fuse mountings, and similar switchboard apparatus and supplies. * * *

Considering those definitions along with the testimony of the importers' witness, and relying on *Federal Electric Power Products Co.*

v. *United States*, 35 Cust. Ct. 47, C.D. 1720,[4] in which the aforementioned dictionary definitions are quoted, the Customs Court concluded that the involved circuit breakers fall within the purview of the common meaning of the term "switchgear."

It seems clear that the field of controlling and distributing electrical energy involved here is a technical one and that the common meaning of the term "switchgear" must be determined in that context. Under such circumstances, reliance should not be confined to general dictionaries to determine the meaning of the term. See *Firth Sterling, Inc.* v. *United States*, 48 CCPA 130, C.A.D. 779, which states:

* * * too great reliance should not be placed on a *general* dictionary to determine the common meaning of technical terms. In the field here involved "concentrate" is obviously a highly technical term and no general dictionary can be expected to reflect all of the refinements of its meanings in different contexts.

The testimony and the definitions advanced, including the definitions cited from technical publications,[5] satisfy us that the common meaning of "switchgear" is broad enough to include the circuit breakers here in issue. The importers' witness concedes in effect that the term is frequently used in that broad a sense. While he prefers a narrower definition in the present instance, his testimony is inconclusive as to any reason why such definition is more appropriate than the broader one. Certainly his testimony is not at all persuasive that the common meaning of the term is limited in the manner urged by ▮ the importer.

It is basic, of course, that the importer has the two-fold burden of proving that the collector's classification is erroneous and that the classification for which he contends is correct. *Bob Stone Cordage Co., et al.* v. *United States*, 51 CCPA 60, C.A.D. 838. In the present case, the record provides no sound basis for finding that the trial court erred in upholding the classification of the collector.

---

[4] There the court ruled that a large piece of equipment described as a circuit breaker, designed primarily for use in the control of high-voltage motors, but also usable for controlling a branch circuit, was properly dutiable as "Switches and switchgear which are not wiring apparatus" within the meaning of that phrase in paragraph 353, as modified. The witness for the plaintiff in that case stated that a circuit breaker is a form of switchgear. [35 Cust. Ct. at 49].

[5] The government also cites the following from the chapter on "Switchgear and Control Equipment" in Electric Engineers' Handbook, Electric Power, John Wiley & Sons, Inc., 4th ed., 1949, p. 12–02:

The subjects of switchgear and control are very closely related in that both are concerned with the opening and closing of circuits and frequently employ the same equipment in so doing. The distinctions between them arise from the types of circuits involved and the reasons for changing the condition of the circuit.

Switchgear is a general term covering switching and interrupting devices, also assemblies of those devices with control, metering, and protective and regulating equipment with the associated interconnections and supporting structures (NEMA Definition SG–50–1).

We have not overlooked certain decisions cited in a memorandum of the importer as holding that tariff terms are to be defined in accordance with their common meaning as opposed to their "technical or scientific meaning."[6] Those decisions are not applicable here, however, since the record supports the conclusion that the broad meaning attributed to the term "switchgear" by the Customs Court is the common meaning of the term in the field of controlling and distributing electrical energy.

The judgment is *affirmed*.

*Barnes, Richardson & Colburn* (*E. Thomas Honey*, of counsel) for appellants.
*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Shiela N. Ziff* for the United States.

---

[6] *Meyer & Lange* v. *United States*, 6 Ct. Cust. Appls. 181, T.D. 35436; *Bakelite Corporation* v. *United States*, 16 Ct. Cust. Appls. 378, T.D. 43117; *American Felsol Company* v. *United States*, 25 CCPA 367, T.D. 49454; *C.J. Tower & Sons* v. *United States*, 41 CCPA 195, C.A.D. 550.

