(C.D. 2397)

BORDER BROKERAGE CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 8, 1963)

*Lawrence & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

RAO, Judge: This is an action involving the question of the correct rate of duty to be levied against an importation of merchandise invoiced as "Cotton Polishing Mops." The collector of customs at the port of entry invoked the provisions of paragraph 923 of the

Tariff Act of 1930, as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865, supplemented by Presidential proclamation, 90 Treas. Dec. 280, T.D. 53877, for manufactures of cotton, not specially provided for, to impose duty on said importation at the rate of 20 per centum ad valorem.

Plaintiff's protest against said assessment addresses itself to merchandise described as "Auto Polishing Mops," which, it is claimed, is dutiable at the rate of 12½ per centum ad valorem, pursuant to the provisions of paragraph 911(b) of said tariff act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, for:

Polishing cloths, dust cloths, and mop cloths, wholly or in chief value of cotton, not made of pile fabrics.

A sample of the subject merchandise, in its condition as imported, together with its accompanying container and outer carton, and all descriptions and statements appearing thereon, is in evidence as plaintiff's collective exhibit 1. It constitutes the entire record in this case.

The item in evidence appears to have been made in the following manner: A strip of plain cotton cloth, some 15 inches in length and 4¾ inches in width, is folded lengthwise to a depth of about three-fourths of an inch in width on one side and 1 inch on the other. Stitched to the inner portion of the wider fold, again lengthwise, is a thick cord fringe. The cloth is then folded in half, along its length, and stitched together with the fringe between the two edges, thus forming an open slit from which the bunched fringe extends, and a tape string is attached to either end of the slit. The item fits over a 2-pronged handle, presumably of wood, that penetrates each side of the slit to about the half-way point, to which handle the cloth is then tied by the aforementioned strings. As assembled, the sample has the appearance of a type of dry mop.

The parties to this controversy differ in their concepts of the crucial issue in this case. To counsel for plaintiff, the question is a very simple one. It is contended by him that since this is an article in chief value of cotton, which has the capacity to dust and polish, the collector must have excluded it from the scope of paragraph 911(b), *supra*, by reason of the language "not made of pile fabrics." Counsel urges, on authority of the cases of *M. J. Corbett & Co. et al.* v. *United States*, 26 Treas. Dec. 970, T.D. 34545, and *United States* v. *British & Irish Woolens Corp.*, 22 CCPA 658, T.D. 47635, which generally define the term "pile fabrics" as relating to cloth with an overspreading nap or pile produced at the time of weaving, that the instant merchandise is not made of pile fabrics and, accordingly, should be classified within said provision.

As counsel for defendant sees the issue, before the exclusionary language of the provision can be considered, it must first be determined whether the instant merchandise is embraced within any *eo nomine* designations of the paragraph. It is contended by counsel for defendant that the subject polishers are neither polishing cloths, dustcloths, nor mop cloths, within the intent and meaning of those words, as written into the provision by the legislature; and, hence, were properly classified as manufactures of cotton, not specially provided for.

At the outset, we are constrained to observe that while we entertain little doubt either that the cases cited by counsel for plaintiff authoritatively interpret the meaning of the term "pile fabrics" or that the merchandise at bar does not fit within that meaning, we are by no means convinced that this finding reaches the heart of the issue to be resolved in this case. As pointed out by counsel for defendant, classification within the purview of paragraph 911(b), *supra*, depends, in the first instance, upon whether or not these articles are polishing cloths, dustcloths, or mop cloths.

It is by now well established that, in the absence of commercial designation, which is not here involved, words used in a tariff statute are to be construed in accordance with their common meanings. *Armand Schwab & Co., Inc.* v. *United States*, 32 CCPA 129, C.A.D. 296. It is equally well settled that common meaning is matter of law to be found by the court, and that, in making such finding, the court may draw upon common knowledge or resort to any relevant authority which may serve as a guide to judicial understanding. *Nix* v. *Hedden*, 149 U.S. 304; *United States* v. *Florea*, 25 CCPA 292, T.D. 49396.

Seemingly, common knowledge alone would suffice in this instance to support a finding that the articles at bar are not within the purview of the language used in said paragraph 911(b). Each of the items enumerated in the provision is referred to by a double description, embracing both its use and its character. Insofar as use is concerned, the articles listed are such as are adapted for polishing, dusting, or mopping. Insofar as character is concerned, they are such as are of the nature of cloth.

That the merchandise at bar fits the first portion of each description may be said to be supported by the article itself, as supplemented by the statements on the container. But that it does not respond to the second is almost too obvious to require comment. It seems clear that, in their imported condition, the subject articles are something more than cloths and that the correct term to employ in their description is "mops."

Webster's New Collegiate Dictionary, 1961 edition, defines a "mop" as—

An implement for washing floors, or the like, made of a piece of cloth, or a collection of thrums, coarse yarn, or rags, *fastened to a handle.* * * * [Italics supplied.]

The same authority defines "cloth" as—

.1. A pliable fabric woven, felted, or knitted from any filament; commonly, fabric of woven cotton, woolen, silk, rayon, or linen fiber, used for garments, etc.; also, a piece of such fabric. * * *

If, in the designation of articles for polishing, dusting, or mopping, Congress had intended to include mops, *per se*, there was no need for it to employ the expression "mop cloths," for, in that sense, the term is tautological. Yet, it may not be presumed that Congress has used superfluous or unnecessary language. *Fensterer & Voss (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 105, T.D. 40029. A *mop* is not cloth. It is something made from cloth. Consequently, a mop cloth is not a mop, but either an article used for the making of mops or one used in the manner of a mop.

That this comports with what Congress understood to be the meaning of the language of this paragraph is indicated by reference to the Summary of Tariff Information, 1929, on the Tariff Act of 1922, a volume prepared for the use of Congress in its consideration of the provisions of the Tariff Act of 1930. It is there stated (p. 1578):

Polishing cloths and dust cloths are small squares of napped cotton cloth, usually flannel, used in the household for polishing and dusting furniture or other articles; they are also used in polishing automobile bodies, harness, etc. Polishing cloths made of pile fabrics, such as velveteen, are dutiable under paragraph 910 [Tariff Act of 1922]. Mop cloths are used for scrubbing and are usually either plain or leno woven; the filling is usually of cotton waste, jute, or other cheap material.

We are convinced that finished mops of the kind here involved are neither covered by the express language of paragraph 911(b), nor embraced therein by congressional intendment; and that, therefore, there is no merit in the contention of the plaintiff in this case. By reason thereof, all claims in the instant protest are overruled.

Judgment will be entered accordingly.