(C.D. 2450)

Edward Hyman Co. *v.* United States

United States Customs Court, Second Division

(Decided April 29, 1964)

*Stein & Shostak* (*S. Richard Shostak* and *Marjorie M. Shostak* of counsel), for the plaintiff.

John W. Douglas, Assistant Attorney General (*Morris Braverman* and *Herbert L. Warren*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: Plaintiff is an importer of cotton cloths which, in the case of the shipments here in issue, were invoiced as—

> Wiping Cloth (Shop Towel) unbleached
> @ 2,500 pieces per bale
> Size: 18″ by 17½″ per piece
> Weight: 2.75 yds./lb.

This merchandise was assessed with duty at the rate of 20 per centum ad valorem as "Towels, other than pile fabrics, wholly or in chief value of cotton, whether in the piece or otherwise, and whether or not Jacquard-figured," as provided in paragraph 911(a) of the Tariff Act of 1930, as modified by the Japanese Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 235, T.D. 53865, supplemented by Presidential proclamation, 90 Treas. Dec. 280, T.D. 53877.

It is the primary contention of the plaintiff that said cloths are properly dutiable at the rate of 2 cents per pound within the purview of paragraph 922 of said act, as modified by said Japanese protocol, as supplemented, *supra*, as "Rags, including wiping rags, wholly or in chief value of cotton, * * *." Plaintiff makes the alternative contention that the subject cloths are dutiable at the rate of 12½ per centum ad valorem in paragraph 911(b) of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as "Polishing cloths, dust cloths, and mop cloths, wholly or in chief value of cotton, not made of pile fabrics."

As the case has been submitted for decision, it is conceded that the cloths in issue, a sample of which is in evidence as plaintiff's exhibit 1, are not made of a pile fabric, and, in view of the collector's classification and of the alternative claims of plaintiff, it may be assumed that the fact that these cloths are wholly or in chief value of cotton is not disputed.

In support of its major contention that the articles at bar are wiping rags, plaintiff introduced the testimony of six witnesses, all of whom were in one way or another affiliated with concerns which supply uniforms and linens to commercial and industrial users on a rental basis. They were William N. Morgan of the Morgan Industrial Towel & Uniform Supply Co., with 24 years of experience in this field, in Biloxi, Miss., and Los Angeles, Calif.; Frank A. Blau, owner of the

Manchester Linen Supply Co., engaged in that line of endeavor for 20 years in the area of Los Angeles and Orange Counties of California; Myron K. Roberts, general manager and owner of Vernon Industrial Uniform Co., with 17 years of experience in this type of business, operating primarily in Los Angeles, Calif.; Larry Zimmerman, an employee of West Coast Uniform and Hi-Grade Textile Companies, both of which are subsidiaries of Nassau Industrial Uniform Co. of Freeport, L.I., N.Y., whose 6 years of experience included the sale of cloths like plaintiff's exhibit 1 all over the country, as well as familiarity with the rental, distribution, and laundry operations of the parent company; Fred A. Mickel, an employee of Atlas Coverall & Uniform Supply Co. of Los Angeles, whose 22 years of experience in this type of business included a period of time in a similar business in Toledo, Ohio; and Edward Hyman, president of the plaintiff company, a concern which imports cloths, such as are here involved, partially manufacturers domestically produced similar cloths, and sells them to organizations of the types with which the prior witnesses were affiliated. Mr. Hyman has been engaged in this kind of business since prior to 1930. His company also operates a linen supply business under the name of the National Linen Service Co.

No useful purpose would be served herein in setting forth in detail the substance of each witness' testimony. The court has carefully analyzed the evidence which they gave and finds it susceptible of the following summary:

Merchandise of the instant type, which is designated variously as wiping rags, wiping towels, shop towels, and wiping cloths, and has been so termed since prior to 1930, is used in such establishments as service stations, garages, automobile agencies, aircraft plants, electrical firms, printing companies, paint shops, and the like, for the purpose of wiping machine parts and cleaning away grease and oil. After use, the cloths are picked up for laundering, subjected to a single process washing cycle, with a caustic cleaning compound, and then tinted or dyed blue, red, or orange, so as to cover over or obscure any remaining stains. The cloths, after drying, are folded in bundles of 10, as illustrated by plaintiff's collective exhibit 3, packaged into bundles of 100, and redistributed to the trade. On an average, such cloths will withstand 13 to 20 washings before falling apart.

The witnesses were in agreement that the definitions of the word "towel," as given in Webster's New International Dictionary and Funk & Wagnalls New Standard Dictionary, correctly expressed their understanding of the common meaning of that term. The definitions read to the witnesses were as follows:

A cloth used for wiping, especially one used for drying anything wet; as a bath or dish towel. [Webster's New International Dictionary.]

A cloth, usually of linen, for drying anything by wiping—especially after washing it; as a bath-towel; dish-towel." [Funk & Wagnalls New Standard Dictionary.]

They, nevertheless, were of opinion that the articles at bar did not fall within those definitions, for the reason that they differ in material, size, and texture; are not put to the use of wiping parts of the body or dishes after washing, as are towels; are subjected to entirely different washing procedures; and differ substantially in rental value, the wiping cloths renting for 2 cents a piece; hand towels, of the type introduced into evidence as plaintiff's exhibit 2, for 8 cents a piece.

It further appears, from the record, that plaintiff's exhibit 1 is a loosely woven harsh cloth known as Osnaburg, made from low grade or so-called part waste cotton. It has one selvage edge and three edges which are hemmed by overcasting. It is a type of article which has been manufactured and sold in the United States since 1926, in competition with torn segments of cotton cloth, as illustrated by defendant's exhibit A, and described as a throwaway rag.

In the course of his testimony, Mr. Hyman gave the following details as to the differences between exhibits 1 and 2:

A. Exhibit 1 is a hand spun yarn that is used in its manufacture, and it is not as absorbent as Exhibit 2, which is a soft spun yarn that is more absorbent, usually for absorbing water.

Q. Is there any difference in the weaving process?—A. Well, they are both done on looms. The difference is that the Osnaburg, or Exhibit 1, is woven on a long, wide piece of goods, 36 inches wide, and they are cut 18 by 18, and they have only one selvage on each piece whereas Exhibit 2 has two selvages on both sides. It is woven usually on a 16 or 18 inch loom, has a hem on both ends, which makes it a little more distinctive. Both the serging on Exhibit 1 and the hemming on Exhibit 2 is used to keep them from fraying.

Q. You referred to Exhibit 1 as being 18 by 18. Is that a standard size?—A. We call them 18 by 18 because that is the size that they usually are sold under, but they may come 17 or 17½, depending upon the width of the cloth, and the loom, and the way they are stretched when finished.

Q. Is that a standard size common throughout the United States?—A. Yes, it is approximately.

Q. What is the size of Exhibit 2 that you have there?—A. It usually runs about 16 to about 36; in some instances 18 by 36.

Mr. Hyman also testified that cloths like exhibit 1 are finished articles which are sold by his company for 4½ to 5½ cents each, whereas towels like exhibit 2 sell for about 15 cents a piece.

Predicated upon the stated distinctions between the instant cloths and hand towels, such as are represented by plaintiff's exhibit 2, as well as the dictionary definitions hereinabove recited and the tariff history of the provision for towels, plaintiff strenuously contends that said cloths are not towels and were improperly so classified by

the collector. It is urged that a coarse cloth of the dimensions of the merchandise at bar is not the usual texture, size, and shape of the article used for drying purposes which is commonly known as a towel; and that the circumstance that these cloths are sometimes referred to as "shop towels" or "wiping towels" does not suffice to establish that they are, in fact, towels.

It is further contended that the tariff history of paragraph 922, as modified, *supra*, clearly reveals a congressional purpose to include within the provision for wiping rags all cloths chiefly used for wiping machinery, whether they be cloths specially produced for that use or discarded segments of cloth applied to such use. Particular reference is made to the hearings before the subcommittee of the Senate Committee on Finance on H.R. 2667, the bill which became the Tariff Act of 1930, and to Senate Report No. 37, dated September 4, 1929, relating to this provision to substantiate the inference that, in providing for wiping rags, Congress did not intend to differentiate between actual rags and finished cloths used for wiping purposes.

With respect to the alternative claim that the instant cloths are polishing cloths within the scope of paragraph 911(b), as modified, *supra*, counsel for plaintiff adverts to the following comments in volume 9 of the 1948 Summaries of Tariff Information:

Polishing cloths and dust cloths, made from nonpile fabrics, consist of small squares (usually with bound edges) of napped cotton cloth. Mop cloths, usually either plain or leno woven, are used for scrubbing floors. Dish cloths are similar to mop cloths but are smaller and lighter in weight. [Page 110.]

* * * Wipers manufactured from cloth made principally of cotton-waste and cut into squares and hemmed or overcast are dutiable as "polishing cloths, dust cloths, and mop cloths" under paragraph 911(b). [Page 207.]

Counsel for defendant relies upon the frequent record references to the subject cloths as wiping towels and shop towels to sustain the collector's action in invoking paragraph 911(a) as modified, *supra*. In any event, it is contended that finished cloths are not rags and, therefore, not classifiable in paragraph 922, *supra*, nor the cloths enumerated in paragraph 911(b) as modified, *supra*, because they are not used for any of the purposes for which such cloths are naturally intended.

Whether or not the collector properly classified the instant cloths as towels is a question which need not necessarily be first determined in this action, in view of the presumption of correctness which attaches to the collector's classification of merchandise and the dual burden which rests upon a party challenging his action of showing not only in what respects the collector committed error, but also in what respects the claimed classification has merit. *Bob Stone Cordage Co. et al.* v. *United States*, 51 CCPA 61, C.A.D. 838; *Atlantic Aluminum & Metal Distributors, Inc.* v. *United States*, 47 CCPA 88, 91, C.A.D.

735, and cases cited therein. If the plaintiff fails in either endeavor, the collector's classification must stand. Accordingly, if the instant cloths are not established to be "wiping rags" or "polishing cloths, dust cloths, or mop cloths," as the case may be, it is immaterial for the purposes of this case that they are also not towels. For the reasons hereinafter appearing, we are of opinion that the contentions of plaintiff have not been sustained.

At first blush, it must seem that the category of merchandise for which Congress was providing in paragraph 922 of the Tariff Act of 1930 was so aptly described as to indicate without further analysis exactly what it intended to encompass. It does not appear that the words are difficult to understand, or obscure or ambiguous in meaning. As originally enacted, the provision reads as follows:

> Rags, including wiping rags, wholly or in chief value of cotton, except rags chiefly used in paper-making, 3 cents per pound.

In this short provision, the word "rags" appears three times. It is employed to establish the class of articles to which the provision relates, to describe a class of articles which it is intended to embrace, and to specify a class of articles which are excluded from its scope. It is obvious, therefore, that the word upon which the sense of the provision depends is the word "rags."

Under settled principles, words used in tariff statutes are to be construed in accordance with their commercial meaning, which is presumptively that in common use. *Bakelite Corporation et al.* v. *United States*, 16 Ct. Cust. Appls. 378, T.D. 43117; *Hartmann Trunk Co.* v. *United States*, 27 CCPA 254, C.A.D. 95. Common meaning is matter of law to be found by the court, and, in arriving at it, the court may draw upon common knowledge or resort to any relevant authority which may serve as a guide to judicial understanding. *Nix* v. *Hedden*, 149 U.S. 304; *United States* v. *Florea*, 25 CCPA 292, T.D. 49396. Common meaning once declared persists until a contrary meaning is established, by a change in the language of the statute. *United States* v. *Great Pacific Co. et al.*, 23 CCPA 319, T.D. 48192.

In the case of *Mattoon & Co., Inc.* v. *United States*, 42 CCPA 19, C.A.D. 563, our appellate court, in considering the scope of the provision for wool rags in paragraph 1105 (a) of the Tariff Act of 1930, as modified by prevailing trade agreement, quoted with approval the following definitions of the "familiar" word "rags":

*Webster's New International Dictionary—*

> Rag 1. a. A waste piece of cloth torn or cut off; a tattered piece of cloth; a shred; tatter. b. pl. Remnants of used clothing, utilized for paper, lint, shoddy, etc.

*New Standard Dictionary—*

Rag, n. 1. A fragment of cloth torn or partly torn from its original connection; especially, a worn, frayed, or torn bit of a garment; * * *.

Since it is clear that the instant cloths are not torn or cut fragments of fabric, but are, in fact, finished articles of cloth specially produced to subserve a particular function, it is obvious that they are not rags in the conventional sense, as defined by the lexicons, or as judicially construed. Unless it can be said that the modification of the word by the participial adjective "wiping" imparts some special connotation to the term "rags," there is no reason to discard the notion that these cloths are not rags for tariff purposes, or to consider the history of the provision to ascertain whether Congress intended some other construction. Words in a statute are to be interpreted in their literal sense and, in the absence of ambiguity, there is no occasion to resort to extraneous data to ascertain their meaning or to determine the intent with which they might have been used. *Sandoz Chemical Works, Inc.* v. *United States*, 50 CCPA 31, C.A.D. 815.

In Webster's New International Dictionary, the verb "wipe" is defined as follows:

[*v.t.*] 1. To rub with or as with something soft for cleaning; to clean or dry by rubbing; as, to *wipe* the hands. 2. To remove by or as by rubbing or cleansing; to rub off; * * *.

The noun "wiper" is therein defined as:

1. One who or that which wipes. 2. Something used for wiping, as a towel or rag.

Under the circumstances of the foregoing definitions, a wiping rag is a torn or cut fragment of cloth used for cleaning purposes and does not include a specially manufactured, hemmed, piece of cloth which is also used for wiping purposes.

Although we do not consider the expression "wiping rags" to be in any respects ambiguous so as to require examination of the proceedings before the legislature to ascertain congressional intent, we have carefully reviewed all references to the contemplated provision prior to its enactment. We find therein, especially in the Hearings before the Subcommittee of the Senate Committee on Finance (vol. IX, pp. 36–37, 42, vol. XV, pp. 928–949), that while it is true that, on several occasions, the witnesses appearing before the committee confused the expressions wiping rags and wiping cloths, they, nevertheless, apprised the committee that the "wiping rags" it was considering were different from the "wiping cloths" of domestic production. We note the following in the brief of Hatton Lovejoy, submitted in behalf of several cotton mills manufacturing, "what is known as wiping cloths":

A comparison of quotations of the prevailing prices of foreign wiping rags with the manufactured cost of domestic wiping waste, shows that the manufac-

tured cost of domestic wiping waste runs at least 4 cents per pound higher than the Japanese wiping cloths on shipboard at American ports without duty, on a comparison of the wiping waste and wiping rags in corresponding grades. It will require at least 4 cents per pound to give the domestic wiping waste an even chance in the market with these Japanese wiping rags.

The manufactured cost of the finished domestic wiping cloths is much higher. Their use in competition is possible only because they are more substantially made and can be rewashed and reused a number of times. The Japanese wiping rags are just what the term implies, rags from old clothing or similar cloths. The domestic wiping cloths are made from new cloth woven in this country, from which the wiping cloths are cut and then hemmed or overedged so as to make the substantial finished article similar to a finished, hemmed, or overedged domestic mop cloth or kitchen cloth.

Seemingly some confusion in this matter persisted, since it appears from Senate Report No. 37, dated September 4, 1929, that the domestically produced wiping cloths were referred to as "wiping rags made from specially woven fabrics." Nevertheless, in the light of the full discussion of these various commodities before the subcommittee, and the plain meaning of the language used, we are not convinced that Congress intended to include within the provision for "wiping rags," finished pieces of cloth, hemmed or overedged, used for wiping purposes. Especially in view of the careful enumeration of such items in paragraph 911(b) as "Polishing cloths, dust cloths, and mop cloths," it does not seem that such inapt terminology as "rags" would have been employed to designate similar cloths used for wiping purposes.

The merchandise before the court does not consist of rags in any sense of that term, and can not, therefore, find classification within a provision for "wiping rags."

Turning now to the alternative claim that these cloths are polishing cloths, dustcloths, or mop cloths within said paragraph 911(b), we are equally convinced that they are not so provided for.

In the recent case of *Border Brokerage Co.* v. *United States*, 50 Cust. Ct. 115, C.D. 2397, this court had occasion to consider this provision in connection with an importation of finished auto-polishing mops. We there quoted, as indicative of our understanding of what Congress meant in the use of these particular words in the provision, the following statement from the Summary of Tariff Information, 1929, on the Tariff Act of 1922, a publication of the United States Tariff Commission for use by Congress in its consideration of the provisions of the Tariff Act of 1930:

Polishing cloths and dust cloths are small squares of napped cotton cloth, usually flannel, used in the household for polishing and dusting furniture or other articles; they are also used in polishing automobile bodies, harness, etc. Polishing cloths made of pile fabrics, such as velveteen, are dutiable under paragraph 910 [Tariff Act of 1922]. Mop cloths are used for scrubbing and are usually either plain or leno woven; the filling is usually of cotton waste, jute, or other cheap material.

This is the sense in which the dictionaries define the involved descriptive terms—polishing is the act of making smooth and glossy, usually by friction; dusting is the act of removing fine dry pulverized particles of earth; mopping is the act of rubbing or wiping with a mop, as for example, a wet floor—and, we believe, the sense in which Congress used these terms in its enumeration of the cloths provided for in said paragraph 911(b). *Cf.* Webster's New International Dictionary of the English Language.

The unsupported statement quoted, *supra*, from the 1948 Summaries of Tariff Information to the effect that cotton wipers are dutiable as polishing cloths, dustcloths, and mop cloths, not only tends to run counter to the literal meanings of such terms, but also seems to enlarge upon the effective scope thereof, as contemplated by Congress at the time the provision in question was enacted. Whereas Congress is chargeable with notice of comments contained in the 1929 Summary of Tariff Information, which was before it at the time of the enactment of the Tariff Act of 1930, it did not legislate in the light of observations made some 19 years later, and conclusions contained in the 1948 summaries are not necessarily controlling of congressional intent. *Dodge & Olcott, Inc.* v. *United States*, 45 CCPA 113, C.A.D. 683.

Since the articles at bar are neither wiping rags within paragraph 922, as modified, *supra*, nor polishing cloths, dustcloths, or mop cloths within paragraph 911(b), as modified, *supra*, plaintiff has failed to sustain the burden of establishing a meritorious claimed classification, and the presumption of correctness of the collector's classification has not been overcome. All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.