(C.D. 3690)

Edward Hyman Company *v.* United States

United States Customs Court, Second Division

(Decided February 5, 1969)

*Stein & Shostak* (*Marjorie M. Shostak* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*S. William Barr* and *Steven R. Sosnov*, trial attorneys), for the defendant.

Before Rao and Ford, Judges; Ford, J., concurring

Rao, Chief Judge: The court is herein asked to determine the proper classification for customs duty purposes of certain merchandise invoiced as "Cotton Wiping Cloths (Osnaburg Shop Towels) over-

locked on 3 or 4 sides." Upon importation from Hong Kong, customs officials at the port of Los Angeles classified these cloths as cotton towels under paragraph 911(a) of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865, supplemented by Presidential notification, 90 Treas. Dec. 280, T.D. 53877, and accordingly, assessed duty thereon at the rate of 20 per centum ad valorem.

The primary claim of plaintiff is that the articles in issue are wiping rags, within the provisions of paragraph 922 of said tariff act, as modified by said Japanese protocol, as supplemented, *supra*, and are, therefore, dutiable at the rate of 2 cents per pound. Alternatively, plaintiff claims classification as mop cloths, under paragraph 911(b) of said tariff act, as modified by Presidential Proclamation No. 3468, 97 Treas. Dec. 157, T.D. 55615, supplemented by Presidential Proclamation No. 3479, 97 Treas. Dec. 430, T.D. 55649, which provides for duty at the rate of 11 per centum ad valorem.

The relevant statutory provisions are as follows:

Paragraph 911(a) of the Tariff Act of 1930, as modified by said Japanese protocol, as supplemented, *supra*:

Towels, other than pile fabrics, wholly or in chief value of cotton, whether in the piece or otherwise, and whether or not Jacquard-figured_____ 20% ad val.

Paragraph 922 of said act, as modified and supplemented, *supra*:

Rags, including wiping rags, wholly or in chief value of cotton, except rags chiefly used in paper-making _____ 2¢ per lb.

Paragraph 911(b) of said act, as modified and supplemented, *supra*:

Polishing cloths, dust cloths, and mop cloths, wholly or in chief value of cotton, not made of pile fabrics _____ 11% ad val.

The issues as thus posed were previously before this court for consideration in the case of *Edward Hyman Co.* v. *United States*, 52 Cust. Ct. 133, C.D. 2450, affd., 52 CCPA 51, C.A.D. 857, wherein the classification of merchandise identical to that at bar as "Towels, other than pile fabrics, wholly or in chief value of cotton," within the provisions of said paragraph 911(a), *supra*, was upheld. Plaintiff here seeks a retrial of the issues decided adversely to it in the above case, the records and exhibits of which have been incorporated into the instant record. We summarized the testimony of plaintiff's witnesses at the first trial as follows:

> Merchandise of the instant type, which is designated variously as wiping rags, wiping towels, shop towels, and wiping cloths, and

has been so termed since prior to 1930, is used in such establishments as service stations, garages, automobile agencies, aircraft plants, electrical firms, printing companies, paint shops, and the like, for the purpose of wiping machine parts and cleaning away grease and oil. After use, the cloths are picked up for laundering, subjected to a single process washing cycle, with a caustic cleaning compound, and then tinted or dyed blue, red, or orange, so as to cover over or obscure any remaining stains. The cloths, after drying, are folded in bundles of 10, as illustrated by plaintiff's collective exhibit 3, packaged into bundles of 100, and redistributed to the trade. On an average, such cloths will withstand 13 to 20 washings before falling apart.

The witnesses were in agreement that the definitions of the word "towel," as given in Webster's New International Dictionary and Funk & Wagnalls New Standard Dictionary, correctly expressed their understanding of the common meaning of that term. The definitions read to the witnesses were as follows:

> A cloth used for wiping, especially one used for drying anything wet; as a bath or dish towel. [Webster's New International Dictionary.]

> A cloth, usually of linen, for drying anything by wiping—especially after washing it; as a bath towel; dish towel. [Funk & Wagnalls New Standard Dictionary.]

They, nevertheless, were of the opinion that the articles at bar did not fall within those definitions, for the reason that they differ in material, size, and texture; are not put to the use of wiping parts of the body or dishes after washing, as are towels; are subjected to entirely different washing procedures; and differ substantially in rental value, the wiping cloths renting for 2 cents a piece; hand towels, of the type introduced into evidence as plaintiff's exhibit 2, for 8 cents a piece.

It further appears, from the record, that plaintiff's exhibit 1 is a loosely woven harsh cloth known as Osnaburg, made from low grade or so-called part waste cotton. It has one selvage edge and three edges which are hemmed by overcasting. It is a type of article which has been manufactured and sold in the United States since 1926, in competition with torn segments of cotton cloth, as illustrated by defendant's exhibit A, and described as a throwaway rag.

Plaintiff's exhibit 1 and defendant's exhibit A in the above case also serve as samples, with the same numerical designations, in the instant protest. Counsel for the respective parties also have stipulated that the merchandise in issue is in chief value of cotton, and is not a pile fabric.

At the second trial, plaintiff supplemented the above record by introducing into evidence fourteen additional exhibits and the testimony of two witnesses. The issue here presented for decision is whether this additional information proves either of plaintiff's claimed classifications to be the correct one. Until this has been established,

in view of our conclusions in the incorporated case, and following the reasoning therein, we do not deem it necessary to consider whether the articles at bar are or are not "towels" within the meaning of paragraph 911 (a), *supra*, for we there stated:

> Whether or not the collector properly classified the instant cloths as towels is a question which need not necessarily be first determined in this action, in view of the presumption of correctness which attaches to the collector's classification of merchandise and the dual burden which rests upon a party challenging his action of showing not only in what respects the collector committed error, but also in what respects the claimed classification has merit. *Bob Stone Cordage Co. et al.* v. *United States*, 51 CCPA 61, C.A.D. 838; *Atlantic Aluminum & Metal Distributors Inc.* v. *United States*, 47 CCPA 88, 91, C.A.D. 735, and cases cited therein. If the plaintiff fails in either endeavor, the collector's classification must stand. Accordingly, if the instant cloths are not established to be "wiping rags" or "polishing cloths, dust cloths, or mop cloths," as the case may be, it is immaterial for the purposes of this case that they are also not towels. * * *

Two witnesses testified in the instant case in support of plaintiff's primary contention that the imported cloths are wiping rags. They were Edward Hyman, president of the plaintiff company since 1926, who was also a witness at the first trial, and Alfred Sobelman, in the wiping rag business since 1955, but whose familiarity with rags and wipers extends back to 1935, through his employment in the linen supply industry, first in New York City, as a checker, driver, supervisor, and salesman, and later, in the Los Angeles and Sacramento areas.

Both witnesses testified at length, but the main thrust of their testimony was seeking to establish that the articles in issue were not towels, within the meaning of paragraph 911 (a), *supra*. In view of the incorporated case, this is not necessarily the primary issue, for assuming, *arguendo*, that these are not towels, in the absence of a showing that they are either wiping rags or mop cloths, our only recourse would be to overrule the protest without affirming the action of the classifying official.

After careful analysis, the testimony of Mr. Hyman and Mr. Sobelman pertinent to the issue of whether the merchandise at bar consists of wiping rags or mop clothes, as claimed by plaintiff, can be summarized as follows:

The terms "rag" and "wiping rag" refer to two distinct articles. A wiping rag can be made of new material, such as plaintiff's exhibit 1, or from discarded articles, such as defendant's exhibit A, which must be cut down to a uniform size, generally 18 inches and sometimes hemmed or overlocked to prevent fraying. The terms "wiping rags" and "wiping cloths" are synonymous, but the latter is used in an effort to upgrade and prevent abuse of the item. This same evolution is

present in the interchangeable use of the terms "washrag" and "wash-cloth", and "dishrag" and "dishcloth". Mr. Hyman testified that cloths such as the articles at bar were always referred to as rags in the plant, but that the term "shop towel" evolved about 1942 to describe the same item. Mr. Sobelman had always referred to these items as "shop rags" until a few months before the trial when his company moved and started calling them sterilized wiping cloths.

The witnesses agreed that articles made of new material, such as the merchandise at bar, are generally rented or sold by the piece, while wiping rags made from discarded materials sell or rent by the pound, and when rented, can be returned, laundered, and reused in the same manner as cloths of new material.

Counsel for defendant read the following two definitions of the word "rag" to Mr. Hyman, and only the first definition slightly modified to Mr. Sobelman:

*Webster's New International Dictionary*

A waste piece of cloth torn or cut off; a shred; tatter.

*Funk & Wagnalls New Standard Dictionary*

A fragment of cloth torn or partly torn from its original connection; especially a worn, frayed, or torn bit of a garment; * * *.

Counsel for plaintiff read the following definition of "rag" from Webster's New World Dictionary of the American Language, 1959, in part to the witness Sobelman and in its entirety to the witness Hyman:

A waste piece of cloth, especially one that is torn or uneven. 2. small piece of cloth for dusting, cleaning, washing, and so forth. 3. anything more or less resembling a rag, considered of little value: 4. plural – old, worn clothes; hence, 5. pl. – any clothes:, and so forth.

Mr. Hyman testified that the article in issue is not within the dictionary definitions of the term "rag" as read to him by counsel for defendant, and would conform only to number 2 of the definition read to him by counsel for plaintiff. Mr. Sobelman stated that "rag" as defined in *Webster's New International Dictionary* would, in a broad sense, cover the items he knows and sells as rags, and that the definition read by counsel for plaintiff would conform to his understanding of the word "rag".

Three witnesses testified in behalf of defendant: Mr. Sam F. Berg is the president and sales manager of a wiping material company that sells both wiping rags and shop towels to industrial users in southern California and in two Western States. He has forty-one years of experience in the wiping rag industry and has sold wiping rags since 1925. Although his company has dealt in shop towels only for the last two and a half years, he has been personally familiar with them since 1932 or 1933. Defendant's second witness, Mr. Nicolas Fischer, has

been associated with a company in the wiping materials industry for forty years, and has been president for the last twenty-five years. He has sold wiping rags for approximately forty years, and shop towels for five years, in California, Arizona, Nevada and New Mexico. Mr. Fischer stated, however, that he has been familiar with shop towels for thirty years, because they were sold in direct competition with the wiping rags sold by his company. J. Frank Edwards, last witness for defendant, has been employed by Callaway Mills, Incorporated, for forty-one years and has been branch manager and salesman in Los Angeles for the last thirteen years. Prior to that, as sales manager, he supervised the sales of shop towels throughout the United States. Although Callaway Mills has never sold wiping rags, Mr. Edwards has been familiar with them in the trade since 1929.

All these witnesses stated that the cloths in issue are known in the trade as shop towels, while articles, such as defendant's exhibit A, made from discarded materials, are called wiping rags. They themselves use the same designations, and have never heard items such as the imported cloths referred to as wiping rags. Although both cloths have the same use, the witnesses for defendant distinguished them on the grounds that shop towels are sold by the piece, are much more expensive than wiping rags, which sell by the pound, and are of newly manufactured materials. Each witness held that the imported merchandise did not conform to the dictionary definitions of a rag because it was new, uniform, and more absorbent than a wiping rag and was not worn, torn, or cut from discarded material.

We held, in the incorporated case, that "The merchandise before the court does not consist of rags in any sense of that term, and can not, therefore, find classification within a provision for 'wiping rags.'" Under the principle of *stare decisis*,[1] that conclusion is controlling unless the new evidence, as summarized above, is sufficient to establish clear error in our determination of the common meaning of the word "rag". Upon careful analysis of that evidence we are convinced that plaintiff has not succeeded in proving either that the imported article is a rag in any sense or that the use of the adjective "wiping" serves to enlarge upon the meaning thereof.

All the witnesses agreed that the article at bar did not conform to the definitions of "rag" read by counsel for defendant, although one of the witnesses for the plaintiff did state only after first agreeing on recross that it did not, that the imported cloth would conform to the second definition of the word "rag" as read by counsel for plaintiff. This possible conformity of the merchandise in issue to a secondary definition of the word "rag," even if coupled with plaintiff's argument that the terms "washrag" and "dishrag" are applied to newly manu-

[1] *R. J. Saunders & Co., Inc.* v. *United States,* 54 CCPA 29, C.A.D. 898 ; *United States* v. *Dodge & Olcott, Inc.,* 47 CCPA 100, 102, 103, C.A.D. 737.

factured articles, is insufficient to establish a common meaning of "rag" different from that decided upon in the incorporated case. There we stated:

> Since it is clear that the instant cloths are not torn or cut fragments of fabric, but are, in fact, finished articles of cloth specially produced to subserve a particular function, it is obvious that they are not rags in the conventional sense, as defined by the lexicons, or as judicially construed. Unless it can be said that the modification of the word by the participial adjective "wiping" imparts some special connotation to the term "rags," there is no reason to discard the notion that these cloths are not rags for tariff purposes, or to consider the history of the provision to ascertain whether Congress intended some other construction.

Plaintiff contends that the evidence here presented makes clear that wiping rags are a separate category of merchandise in the trade and commerce of the United States and that it is this category Congress intended to include within the provisions of paragraph 922 of the Tariff Act of 1930. A very careful study of all the indicia of congressional intent was made by us and by our appellate court in the incorporated case, and the record here presented to us contains no new references. Testimony by plaintiff's witnesses that the term "wiping rag" is used in the trade to refer to cloths made from either discarded articles or newly manufactured material could not lead us to reach a different conclusion than that reached in the previous case. Our appellate court held:

> * * * It is clear to us, as it was to the lower court, that Congress was fully mindful of the difference between wiping cloths and wiping rags and that in the statutory language finally adopted in paragraph 922, wherein the phrase "including wiping rags" was inserted at the suggestion of the Treasury Department in an endeavor to distinguish rags used for wiping from rags used in making paper, its purpose was to refer to a species of rag and not to a *wiping cloth* of newly manufactured material. Considering all factors, we see no error in the decision below denying to appellant classification under paragraph 922 as "wiping rags."

Taking under advisement all of the factors relevant to a determination of the meaning of the words here in issue, we are not persuaded that the imported articles are properly classifiable as wiping rags, within paragraph 922, *supra*.

Plaintiff's alternative claim for classification as mop cloths or polishing cloths, within the provisions of paragraph 911(b) of the Tariff Act of 1930, has also not been established. The record, as here presented to us, contains no supplemental evidence that the articles at bar have ever been considered to be either mop or polishing cloths. Therefore, the rationale in the incorporated case remains applicable. There, our appellate court stated:

\* \* \* In all of the expert testimony adduced by appellant, there is no evidence that the imported wiping cloths are ever referred to as mop cloths or ever used in an operation commonly known as mopping or in connection with mops. Neither do they fall within the paragraph of the 1929 Summary of Tariff Information (appearing in Schedule 9 at p. 1578), referring to paragraph 910 of the Tariff Act of 1922, cited by both parties and the lower court \* \* \*.

We are of the opinion that plaintiff has failed to establish that the articles at bar properly fall within either of the claimed classifications, and that, therefore, the presumption of correctness of the collector's classification has not been overcome.

All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.

CONCURRING OPINION

FORD, Judge: I concur in result.